LA RUE *v.* WESTERN ELECTRIC Co.

*(Circuit Court, S. D. New York.* July 10, 1886.)

1. PATENT—CLAIM—CONSTRUCTION AND EXTENT OF.
    A clause in the application for a patent, immediately associated with the claim, either preceding it or following it, and unmistakably designed to state what the inventor intended to secure to himself by the patent, and to include in his claim, should be construed as a part of the "claim," and covered by the patent.
2. SAME—TELEGRAPH KEY—SOUNDER—TORSIONAL SPRING—INFRINGEMENT—IN-JUNCTION.
    E. obtained a patent for an improvement in "telegraph transmitters." There were four specifications in the claim, in each of which the invention was described as a combination, in a telegraph key, of a torsional spring, by means of a flat strip of metal. with a lever fulcrumed upon it, etc.; and in the preceding clause of the application it was stated that the inventor "did not limit himself to telegraph keys only, * * * as it was equally applicable to relays and sounders." The defendant appropriated and used E.'s combination, and the whole of it, in the sounder. *Held,* that the patent covered the combination when used in a sounder, and not its use in a key only; and that the defendant's instrument was an infringement, and that the complainants were entitled to an injunction.

In Equity. Infringement.
*Briesen & Steele,* for complainant.
*George P. Barton,* for defendant.

BROWN, J. The complainant moves upon the bill and affidavits for a preliminary injunction to restrain the defendant from an alleged infringement of patent No. 270,767, dated January 16, 1883, issued to Edgar A. Edwards, under whom the plaintiff claims for an "improvement in telegraph transmitters." The defendant sets up— *First,* want of novelty; and, *second,* that the defendant's instrument is not within the scope of the patent as shown by the "claim."

The application in the Edwards patent states as follows:

"My invention relates to telegraph keys or instruments, used for transmitting telegraphic signals, and is an improvement on the well-known Morse key, being in substituting for the trunnions or pivots upon which the lever vibrates a torsional spring or strip of metal."

The instrument figured and described in the patent is the key used for sending telegraphic messages. The defendant's instrument, which is alleged to be an infringement, is a "sounder," used at the other end of the circuit to make the message known through the ear of the operator there. The former is worked by the finger of the operator in pressing one end of the key downward. As soon as the pressure is removed, the torsional spring again raises that end of the lever, and the current is thus opened and shut. In the sounder the lever is worked by the attractive force of a small electro-magnet, exerted upon an armature attached to and crossing the under side of the lever at right angles, and serving to draw it down whenever the current is in motion. This downward movement causes the metallic point near the end of the lever to strike against the stop below it, and to make the tick, or sound, that gives this instrument its name. As soon as the current is interrupted, the torsional spring in the defendant's instrument, aided also by a retractile spring, operates to raise the lever, as in the key worked by the finger, without the additional spring. The sounder's lever thus raised strikes the upper stop, and by these two motions the sounds are made that are equivalent to the dashes and spaces in the written strip, and indicate the message to the expert operator without the use of writing. As the bar of the sounder is heavier, and does not project beyond the fulcrum, the torsional spring used in the sounder is aided by a small coil attached to the lever that works as a retractile spring, the same as previously used in the key and sounder. In the key with the Edwards combination this coil is dispensed with.

The use of a torsional spring by means of a flat strip of metal secured at both ends is not, indeed, wholly new. It appears to have been devised for use in certain parts of clock-work some 15 years ago, but to what extent actually used does not appear. It is not shown, however, to have been previously applied in the manner designed in this patent; nor in combination with a lever, or bar, fulcrumed upon the metallic strip, and designed to serve at once as a torsional spring and as a substitute for the use of pivots or trunnions, with or without retractile springs. It is this combination that is patented. It is evidently useful, economical, and valuable. As a combination, it was new; and, in my judgment, the patent is valid.

An inspection of the sounder in question leaves no doubt that it embodies the Edwards invention, nor that it appropriates his combination, and the whole of it. The bar of the defendant's sounder is a lever, which is fulcrumed upon a metallic strip, constructed, shaped, and adjusted in precisely the same manner, and performing precisely the same mechanical functions, that the patented combination per-

forms in the key. It is the identical Edwards combination. The retractile spring used in the sounder is immaterial, since that is merely used in addition to the torsional spring. That patent expressly states that the combination may be used with or without retractile springs. The Edwards combination is used, as I have said, in its entirety; and the sounder is therefore an infringement, unless the scope of the Edwards patent is so much narrower than his invention as to cover his combination only when it is used in the key at the end of the circuit from which the current is sent, and not when it is used in the sounder at the other end of the circuit, where the message is received. The determination of this question depends upon the construction that should be given to the language of the patent, and particularly to the claim.

In the application for the patent, the inventor, after describing the diagrams, the uses, and the advantages of the invention, proceeds as follows:

"I do not limit myself. to the application of torsional springs to telegraph keys alone, as it is obvious the torsional strip or spring may be applied to other electrical instruments. Thus, it may replace the pivots or trunnions of the relay and sounder. I claim, (1) in a telegraph key, the combination with the circuit-breaking lever of a torsional spring, upon which said lever is fulcrumed," etc., "substantially as described. * * * (3) The combination, in a telegraph key, of the lever fulcrumed upon the torsional spring with the adjusting screws, II, II′, for regulating the amplitude of the lever movement, and the retractile resistance of the torsion spring, substantially as described."

Items 2 and 4 in the claim are not materially different, as respects this controversy, from the first item in the claim. In each of the four specifications above quoted the combination is stated to be "in a telegraph key." In all except the third item the language is: "In a telegraph key, the combination with the circuit-breaking lever of a torsional spring," etc. As the patent is for a combination, and as the sounder has no "circuit-breaking lever," the defendant's instrument does not make use of that element of the combination; and therefore, by numerous decisions, it is not an infringement of the patent so far as the patent rests upon the first, second, and fourth specifications of the claim. *Fay* v. *Cordesman*, 109 U. S. 408; S. C. 3 Sup. Ct. Rep. 236; *Shepard* v. *Carrigan*, 116 U. S. 593, 597; S. C. 6 Sup. Ct. Rep. 493.

The third item, however, omits any reference to "a circuit-breaking lever," and claims "the combination, in a telegraph key, of the lever fulcrumed upon the torsional spring with the adjusting screws, H, H′," etc. The paragraph immediately preceding the four specifications of the claim above quoted expressly states, however, that the inventor does "not limit himself to the application of the torsional spring to telegraph keys alone." "It may replace," he says, "the pivots or trunnions of the relay and sounder." This is the precise application and use of the invention that the defendant is now making.

The defendant insists that the "sounder" is not a "telegraph key;" and that inasmuch as the patent is for the combination "in a telegraph key," the use of the same combination in a "sounder" is not an infringement. The rule enunciated in the case of *Railroad Co.* v. *Mellon,* 104 U. S. 112, 118, is claimed to be applicable, viz., that "the scope of letters patent should be limited to the invention covered by the claim, and though the claim may be illustrated, it cannot be enlarged, by the language used in other parts of the specification." In that case, however, the thing invented and described was different from the thing claimed to be an infringement; and the court say: "The claim, so far from covering an *angular* flange upon the wheel, *expressly excludes* such a flange, and embraces only a, flange with a curved or rounded corner."

In this case the exact combination invented and described in the claim is appropriated in the defendant's sounder. Is it to be excluded as not covered by the patent, merely because, in the four numbered specifications of the claim, the combination is described as existing in a "telegraph key," although the use of the combination in a "sounder" is clearly intended to be covered by the language of the preceding clause? I think not. There is nothing in this sounder that is excluded by the third specification, as is the case of *Railroad Co.* v. *Mellon, supra.* What is patented under the third specification is not a telegraph key, nor is the key described as any part of the combination. What is patented is simply a "combination of the lever fulcrumed upon a torsional spring with adjusting screws, for regulating the amplitude of the lever movement," etc., although this combination is stated to be "in a telegraph key." The key exhibits the combination patented. It is not the mere *use* of this combination in a key only, that is patented. It is the combination itself, and the combination only, that is the essential thing, and the thing patented; and that combination is used in this sounder.

In the original application the claim was for "a telegraph key," etc. This claim was disallowed at the patent-office, with the following memorandum: "Descriptive matter not clear; claims are in bad form, being for arrangement of a key-lever, instead of a combination of parts or elements." The same clauses referring to the relay and sounder were in the original application. From this it is clear that the patent-office understood the original application to be for an "arrangement of a *key-lever*," and declined to grant a patent in that form, because a key-lever was not the true thing invented; while they did intend to grant a patent for a certain "combination of parts or elements," *i.e.* the combination of certain parts or elements that existed in the key referred to, but not the key itself, nor the key as a part of the combination, nor the combination when existing in a key only, nor the mere use of the combination in a key.

The statute (Rev. St. § 4888) requires that the inventor "shall particularly point out, and distinctly claim, the part, improvement, or

combination which he claims as his invention or discovery." Whatever the inventor does clearly point out as his invention, and whatever the application does clearly show that the inventor intends to claim as his, should, as it seems to me, be deemed a part of his claim, when found in immediate connection with the specifications of his claim. There is no arbitrary and formal division of the application into different sections required by law that demands that language naturally indicative of the inventor's claim and intention shall be excluded from consideration as a part of the claim under the statute, simply because it is not found in a particular part of the application, or because it does not follow the words "I claim;" nor is it necessary to use the word "claim." Any language that does clearly and unmistakably indicate that the inventor intends to secure to himself the benefit of a certain use of his invention, when the expression is used in immediate connection with the words "I claim," though preceding those words, ought, as it seems to me, to be as much regarded as a part of his claim, in the statutory sense, as the words that follow; because it is clear that the preceding words clearly appear to qualify and explain what follows, and because the intent both of the statute and of the inventor would otherwise be thwarted. Any perfectly clear expression of what the inventor intends to secure to himself, in immediate connection with the claim, is virtually a part of the claim. The reasons for confining the patent to the "claim," viz., because the inventor is presumed to intend to dedicate to the public so much of his invention as he does *not* claim, and because the patent-office is presumed to intend to grant the patent for only what *is* claimed, have no application to such a case.

It is impossible, as it seems to me, to read the inventor's language in this application without perceiving that he intends to secure to himself the benefit of his invention when used in a relay or sounder, as much as when used in a technical "key." No one could imagine from the language of the application that the inventor intended to abandon to the public the use of his invention in the sounder. He states expressly that he "does *not* limit himself to the application of torsional springs to telegraph keys alone, as it is obvious the torsional strip or spring may be applied to *other* electrical instruments. Thus, it may replace the pivots and trunnions of the relay or sounder." If this clause had *followed* the four items specifying his claim, no one would have seriously contended that it was not a part of the claim, and applicable to a sounder. This clause immediately precedes the words "I claim," and shows conclusively what is intended to be included in the claim and the patent. I see no good reason for any different construction simply because this clause precedes those items instead of following them. The intent is equally clear in either case, and in either the clause should therefore be regarded as a part of the claim, and as explaining its meaning, application, and extent. This part of the claim stands precisely as it was in the original applica-

tion. No objection was taken to it in the patent-office. There is no reason, therefore, to suppose that a more limited patent was intended by that office, since the inventor's intent is perfectly clear.

Again, in the third specification of the claim, the element of a "circuit-breaking lever" is omitted. In a "key," strictly so called, this lever is always a circuit-breaking lever. The insertion of this third item in the claim in which that element is omitted indicates clearly, therefore, that this third item was intended to extend the claim beyond circuit-breaking levers, i. e., beyond the particular kind of key used for sending off the message, and to apply the claim to other levers, whenever they made use of this combination; and the preceding clause clearly specifies what those other levers might be, viz., sounders, relays, etc. The sounder, although not a "key" in technical strictness, works in the same way, and, in a general sense, it operates as a key for the delivery of the message to the operator that listens to it, just as the instrument at the other end operates as a key in sending the message forward. Both instruments are equally "telegraphic transmitters," which are described as the subjects of the invention, the sounder being the last instrument used in the transmission of the message.

The fact that the machine in which a patented combination is used is a different machine from that in which the combination was first described, is not a valid defense in a suit for infringement, where the combination patented is only a part of the machine described. This is illustrated by the case of *Rowell* v. *Lindsay*, 113 U. S. 97, S. C. 5 Sup. Ct. Rep. 507, where the combination patented was for "an improvement in a cultivator," and the infringement alleged was in "a sowing-machine." Had the differences in the machines been deemed material, that would have sufficed to dispose of the case. That, however, was evidently not the view of the court. Instead of that, a laborious consideration of the mechanical equivalency of one of the elements used was entered into, and furnished the ground on which the case was decided.

The case of *Zinn* v. *Weiss*, 7 Fed. Rep. 914, seems to be analogous to the present, though that case was less strong for the inventor. There the invention described was of a metallic plate to be used as a fastener. The language of the claim was for "an improved *clothes-fastening* attachment," etc., while the defendant used the same fastening attachment for a pocket-book. The same point here taken was raised there, and it was held to be an infringement. See, also, *Reed* v. *Chase*, 25 Fed. Rep. 94, 100; *Hobbie* v. *Smith*, 27 Fed. Rep. 656, 659.

In *Winans* v. *Denmead*, 15 How. 342, the court say:

"It is generally true when a patentee describes a machine, and then claims it as described, that he is understood to intend to claim, and does by law actually cover, not only the precise forms he has described, but all other forms which embody his invention. * * * Patentees sometimes add to their

claims an express declaration to the effect that the claim extends to the thing patented, however its form or proportions may be varied. *The law so interprets the claim without the addition of those words."*

The defendant's instrument, in the form of a "telegraph transmitter" called a "sounder," appropriates and embodies the invention clearly intended to be secured to the inventor under this patent. Looking at all the language of the application that is designed to set forth the extent of the inventor's patent, and what he intends to secure by it, as constituting his claim, it is clear that the claim includes the combination when used in a sounder. So far as respects the use of this combination, the sounder is the equivalent of the technical key; for the combination operates precisely alike in each. All the merits, as it seems to me, are therefore with the complainant, and the injunction moved for should be allowed.