## WIRT *v.* BROWN.

*(Circuit Court, E. D. New York. September 19, 1887.)*

1. PATENTS FOR INVENTIONS—CLAIMS—ELEMENTS OF COMBINATION.

   In letters patent No. 311,554, granted to Paul E. Wirt, February 3, 1885, for an improvement in fountain pens, the first claim was for "the combination of an ink reservoir with a nozzle fitted thereto, and carrying the pen, and the rubber shaft extending through the nozzle in the space between the inner face of the latter and the upper face of the pen, and held within the nozzle at an intermediate point of its length, one end of the shaft extending beyond the nozzle into the ink reservoir, so as to draw the ink downward from the same, and the other end lies over the pen, so that when the latter is pressed downward in writing, it comes in contact with the shaft to produce capillary attraction, and cause the feeding of the ink downward upon the pen." *Held*, that a shaft having a fulcrum in the nozzle, so that vibration of the lower end of the shaft by the action of the nibs will cause vibration of the upper end, and thus agitate the ink in the reservoir, was not an element in the combination described in the patent.

2. SAME—FOUNTAIN PENS—PATENTABLE DIFFERENCE.

   The only difference in the pens made by plaintiff and those made by defendant was that in plaintiff's pens there was a single shaft, secured at an intermediate point of its length in the nozzle, one end extending up into the ink reservoir, and the other downward over the pen, while in defendant's pens this shaft was divided into two parts, the respective sections having the same functions as the corresponding ends of the shaft in plaintiff's pens. *Held*, that this was not a patentable difference, and that defendant's manufacture was therefore an infringement.

3. SAME—CONSTRUCTION—SPECIFICATIONS AND PATENT—SOLICITOR'S LETTER TO PATENT-OFFICE.

   Where the specifications of the application and of the letters patent are not ambiguous, and are capable of a definite construction, the language of a so-

licitor employed to obtain the patent, used in a communication with the patent-office to express an idea of his own, will not override the language of the patent; especially when there is no evidence to show that the idea was ever adopted by the patent-office.

*W. L. Logan*, for complainant.
*Briesen & Steele*, for defendant.

BENEDICT, J.   This action is brought for an alleged infringement by the defendant of letters patent No. 311,554, granted to the plaintiff, February 3, 1885, for an improvement in fountain pens.   The charge is that certain fountain pens made by the defendant, and known in this record, respectively, as Exhibits B, C, and D, infringe upon the first claim of the plaintiff's patent.   The answer of the defendant does not set up an anticipation of the invention described in the plaintiff's patent, and it is conceded that the style of pen known here as Exhibit D, heretofore made by the defendant, does infringe upon the plaintiff's patent.   The contest is limited to Exhibits B and C.   Upon this issue the defendant has called no witnesses, but he has put in evidence the file-wrapper and the correspondence between the patent-office and the plaintiff's solicitor at the time of obtaining the patent, and also numerous prior patents issued to other parties, as bearing upon the proper construction to put upon the plaintiff's patent.   The question to be decided is therefore a question of construction of the language of the plaintiff's patent.

The first claim in the plaintiff's patent is the only claim necessary to be considered.   That is as follows:

"In a fountain pen, the combination of an ink reservoir with a nozzle fitted thereto, and carrying the pen, and the rubber shaft extending through the nozzle in the space between the inner face of the latter and the upper face of the pen, and held within the nozzle at an intermediate point of its length, one end of the shaft extending beyond the nozzle into the ink reservoir, so as to draw the ink downward from the same, and the other end lies over the pen, so that when the latter is pressed downward in writing, it comes in contact with the shaft to produce capillary attraction, and cause the feeding of the ink downward upon the pen as set forth."

In order to an understanding of the construction of this claim for which the defendant contends, it will be convenient now to describe the pens made by the defendant, and known here as the defendant's Exhibits B and C.   These pens have in combination with the ink reservoir a nozzle fitted thereto, and carrying the pen, similar in all respects to those features as described in the plaintiff's patent.   But, instead of a single rubber shaft extending through the nozzle at an intermediate point of its length, the defendant has two shafts, one extending beyond the nozzle at the heel of the pen up into the ink reservoir, the other extending from the nozzle at the heel of the pen downward, and lying over the pen, where it operates in the same way as does the lower end of the shaft in the plaintiff's pen.   Between the pens Exhibits B and C, and the pens put in evidence as pens made by the plaintiff, the only difference is this: that in the plaintiff's pens there is a single shaft, secured at an interme-

diate point of its length in the nozzle, one end extending up into the ink reservoir, the other downward and over the pen. In the defendant's pen this shaft is divided into two shafts, the lower having the same functions as the lower end of the shaft in the plaintiff's pen, and the other having the same functions as the upper end of the shaft in the plaintiff's pen. Such a division of the shaft makes no patentable difference between the pens. The pens made by the defendant are identical in principle with the pens made by the plaintiff. But the defendant contends that the pens in evidence as pens made by the plaintiff are not constructed in accordance with his patent; that the patent is for a combination, one element of which is a shaft having a fulcrum in the nozzle on which it turns in such a manner that, when the lower end of the shaft vibrates under the action of the nibs upon it, it will cause the upper end also to vibrate, thereby agitating the ink in the reservoir. Such a shaft is not found either in the pens made by the plaintiff or those made by the defendant. Whether the plaintiff's patent describes such a shaft is the question of this case.

Upon this question my conclusion is that a vibrating shaft is not an element of the combination described in the plaintiff's patent, but, on the contrary, the shaft described there is such a shaft as is found in the pens made by the plaintiff, and that the equivalent of such a shaft is to be found in the defendant's pens, Exhibits B and C. In support of this conclusion, I remark that none of the claims of the patent contain language tending in any way to convey the idea that the end of the shaft in the ink reservoir is to vibrate on a fulcrum in the nozzle under the action of the pen. The same is true of the specifications. Indeed, the specifications contain language inconsistent with such an idea. Thus at folio 20, p. 1, the shaft is described as "securely held or wedged at its widest part within the nozzle of the ink reservoir." Again, at folio 75, p. 1, the shaft is said to be "constructed sufficiently thin to be pliable, and yield under the action of the pen." A shaft intended to be a pliable shaft, yielding readily under the action of the pen, is the opposite of a shaft vibrating on a fulcrum in the nozzle under the action of the pen. Again, at folio 110, p. 2, the shaft is described as "forced through the perforation, D, of the nozzle above the pen, and thereby secured permanently in place;" and at folio 115, p. 2, as "securely held in place;" and at folio 15, p. 3, as "held in place by being driven through the space between the end and the adjacent rim face of the nozzle." Expressions like these in the specifications seem to leave no room to contend that the language of the patent describes as an element of the combination a shaft vibrating on a fulcrum in the nozzle under the action of the pen. But the defendant goes outside of the patent, and lays much stress upon a letter to the commissioner of patents from the solicitor employed to obtain the patent; in which letter the solicitor speaks of the shaft as "held within the nozzle at an intermediate point of its length, so that both ends of the shaft are allowed equal play," and insists that "the applicant is the first to employ a rubber shaft held at an intermediate point of its length to allow each end a sufficient play in attracting the ink

downward." This letter, it is contended, shows that the contracting parties—the government and the plaintiff—understood the first claim of the patent to be for a combination having a shaft with a fulcrum in the nozzle, and its upper end vibrating in the ink reservoir under the action of the pen upon its lower end.

A careful consideration of the language of the solicitor's letter shows that the solicitor does not assert that the upper end of the shaft is intended to vibrate on a fulcrum by the action of the pen on the lower end of the shaft. All the letter asserts is that both ends of the shaft are allowed play, and so they are. The letter asserts also that "there is no wear on the shaft," which would not be the case if the shaft was intended to vibrate on a fulcrum in the nozzle with every stroke of the pen. The record shows no reply from the patent-office to the letter of the solicitor. No modification of the application was called out by the letter. The patent was issued to correspond with the application as it stood before the solicitor's letter. It is true that the patent was issued after the receipt of the letter, but that does not warrant a decision that the patent was intended to cover an element nowhere alluded to therein. The supposition of such an understanding is not consistent with the action of the patent-office in issuing the patent in its present form. If such an element was understood by the patent-office to be a part of the invention, the intimation in the examiner's prior letter, (paper No. 5,) where it is said to this same solicitor in respect to the defendant's application, "claims which receive favorable consideration should be definite to the construction shown," would have been repeated on receipt of the letter in question, and a modification of the patent insisted upon.

The cases cited by the defendant (*Shepard* v. *Carrigan*, 116 U. S. 593, 6 Sup. Ct. Rep. 493; *Fay* v. *Cordesman*, 109 U. S. 408, 3 Sup. Ct. Rep. 236; *Sargent* v. *Safe & Lock Co.*, 114 U. S. 63, 5 Sup. Ct. Rep. 1021) require no such conclusion to be drawn from the expressions in this letter of the solicitor as the defendant contends for in this case. If the claim of the specifications of the plaintiff's application or of his patent contained ambiguous language, capable of being understood to mean that the shaft was to vibrate on a fulcrum in the nozzle, these cases might be in point. But I take it no case has gone so far as to hold that the language used by a solicitor to convey an idea of his own, not embodied in the patent, is to override the language of the patent; especially when, as here, there is no evidence to show that the idea was ever adopted by the patent-office.

I find nothing in the file-wrapper, or the proceedings before the patent-office, to justify the contention that the plaintiff's patent is for a combination, one element of which is a shaft having a fulcrum in the nozzle, the upper end of which is intended to vibrate in the ink reservoir under the action of the pen upon its lower end. On the contrary, the patent, as I understand it, is for a combination which is employed by the plaintiff, and is also found in the pens, Exhibits B, C, and D.

The complainant is therefore entitled to a decree and an injunction.