## GOODRICH v. FORD MOTOR CO.

### No. 6249.

District Court, E. D. Michigan, S. D.

Aug. 20, 1935.

Swan, Frye & Hardesty, of Detroit, Mich. (William M. Swan, Francis D. Hardesty, and John C. L. Cowen, all of Detroit, Mich., of counsel), for plaintiff.

Bodman, Longley, Bogle, Middleton & Farley, of Detroit, Mich. (Frank Parker Davis, of Chicago, Ill., and I. Joseph Farley, and Thomas J. Hughes, both of Detroit, Mich., of counsel), for defendant.

RAYMOND, District Judge.

Plaintiff alleges infringement of each of the three claims of patent No. 1,285,129, issued to him November 19, 1918, upon application filed May 26, 1917, for "multicylinder engine". His claim is that defendant, by introduction of a new manifolding system in its 1934 and 1935 models, has adopted the essential teachings of the patent in suit. Manifolding as here used refers to that part of a multicylinder engine which effects distribution of the mixture of air and gasoline particles from the carbureter to and among the several cylinders. The defenses are invalidity and non-infringement. The claims read:

"1. The combination with an internal combustion engine having two banks of

cylinders arranged angularly about the crankshaft, some of the cylinders in a bank having immediately succeeding firing orders, of fuel mixing means, manifolding leading from the said mixing means to the cylinders and divided into passage-ways so that the end of a single passage-way connects only cylinders having a non-immediately successive firing order.

"2. The combination with an internal combustion engine having two banks of cylinders arranged angularly about the crankshaft, each bank including a plurality of cylinders, with some of the cylinders in a bank having immediately succeeding firing orders, of fuel supply means, manifolding reaching both banks of cylinders and arranged and divided so that there are passage-ways each of which leads to a plurality of cylinders in a bank but only the cylinders in such bank that have non-immediately successive firing orders. '

"3. The combination with an internal combustion engine having two banks of cylinders arranged angularly about the crankshaft and each bank including a plurality of cylinders, some of the cylinders in a bank having immediately succeeding firing orders, of fuel supply means and a single manifold reaching to all the cylinders and crossing from one bank to the other at the center, said manifold having a pair of partitions a, a which divide the manifold at the center into passage-ways which lead to a plurality of cylinders in each bank but only the cylinders in such bank that have non-immediately successive firing orders."

The purpose of the invention, the difficulties, and their solution are stated in the specifications,—

"This invention relates to fuel distribution in multi-cylinder engines, especially engines having two opposed blocks of cylinders, as for instance, eight cylinder motors of the V type. In motors of this character where the crankshaft is a four-throw shaft with the throws at the 90 degree points, some of the cylinders do not get the same quantity of fuel mixture as others due to the inertia of the fuel mixture being greater when some of the cylinders are drawing in their charge than others, resulting in an unbalanced relation. * * *

"In an eight-cylinder engine of the V type having a crankshaft of the four throw 90 degree variety such as depicted in Figs. 3 and 4, it necessarily follows that the firing order is such that there will be immediately successive firings in one bank of cylinders. * * *

"In the ordinary eight-cylinder V type engine a four throw 180 degree crankshaft is employed, and it will be found that by tracing out the firing orders in such a crankshaft they can be made to cross each time from one bank of cylinders to the other, consequently avoiding two immediately successive firing orders in a single bank. The vice of this immediately successive firing order in one bank of cylinders is this: The next cylinder firing in the opposite bank has to pull against substantially double inertia effects where an ordinary manifold is used and that cylinder is really starved.

*    *    *    *    *    *    *

"I have remedied this condition by employing separate passage-ways from the fuel supply means which couple up a plurality of cylinders in each bank but which connect cylinders having non-immediately successive firing orders. This coupling up may be achieved in several ways; for instance, a single manifold may be used such as shown in Fig. 2 with a single carbureter and the partitions a, a to provide a manifold at each side divided into the two parts at its center. Or separate carbureters may be used, as shown in Fig. 5, and a single manifold to connect a pair of cylinders at one end of one bank with a pair of cylinders at the other end of the other bank.

"It will be found that by this arrangement no two cylinders are connected by the same manifold passage-way in the same bank having immediately successive firing orders and consequently a cylinder does not have to oppose double inertia effects created by a pair of cylinders in the opposite bank."

Plaintiff contends that when a 90 degree four-throw crankshaft was employed in the place of the 180 degree flat shaft previously used in V–8 engines, a difficulty arose from the fact that no firing order for the cylinders could be devised which would not involve the successive firing of at least some of the cylinders in each bank of the engine. This caused what is referred to as simultaneous suction, due to the simultaneous drawing by those cylinders upon the same supply of fuel. The problem does not exist when the flat or 180 degree crankshaft is used because the firing of one cylinder in the right

bank is of necessity followed by the firing of a cylinder in the left bank, and so on. But plaintiff urges that when a firing cylinder in one bank immediately follows two successively firing cylinders in the opposite bank, the third cylinder's charge is inadequate because it draws not only against the normal suction of one preceding cylinder but against the doubly built up suction of two successively drawing cylinders in the opposite bank. This is the evil the correction of which plaintiff says was sought by him and which resulted in the patent here in controversy.

■■ Extended discussion of the validity of the patent is superfluous, due to the conclusions reached by the court upon the question of infringement. In view of the presumption of validity which attends the grant of a patent and of the fact that the patent office gave consideration to Delaunay-Belleville 1,051,866, the patent principally relied on by defendant as anticipatory, defendant's evidence is not sufficiently convincing to warrant a decree of invalidity. However, examination of Delaunay-Belleville leaves no doubt that the problem of simultaneous suction upon the fuel supply was considered as early as 1909. The problem and its solution are stated in that patent, as follows:

"In a multiple-cylinder explosion motor with a single carbureter when the suctions of two cylinders take place simultaneously during a fraction of a revolution, trouble arises in the flowing of the gases, the suction of one of the cylinders opposing the suction of the other during the period at which suction takes place simultaneously and the result of this is to reduce the efficiency of one or other of these cylinders or of both of them. The suction of a cylinder lasts practically during a stroke, that is to say while the motor effects a half-revolution, so that two suction periods are simultaneous when the angular interval between the commencements of these two suction phases is less than 180 degrees.

"The present invention has for its object to obviate this defect.

"It consists in feeding fuel to the motor by means of two or more separate carbureters, each of them feeding a certain number of cylinders by means of independent piping, these cylinders being selected in such manner that the suction periods of any two of these cylinders are not simultaneous or even partially and consequently the explosions of these cylinders succeed each other at angular intervals of at least 180 degrees. Of course it is to be understood that I use the minimum number of carbureters which will realize the aforesaid conditions."

It is to be noted also that in British patent 28379 to Delaunay-Belleville, issued in 1908, it is said:

"The application of the present invention is the same for two or four cycle motors irrespective of the number of cylinders of the motor and their relative arrangement, such as parallel cylinders, inclined cylinders etc., the novel arrangement consisting in feeding with fuel by means of a carburetter a series of cylinders selected in such a manner that in this series the suction never occurs simultaneously in two or more of the cylinders of which the series is composed."

The application of the Delaunay-Belleville invention to engines of from two to sixteen cylinders is suggested on page 2 at lines 22–25, inclusive, of the specifications of patent 1,051,866. In view of these disclosures, the inventive concept revealed by the patent now being considered must be accorded a very limited scope. The limitations imposed by applicant in the proceedings to obtain the grant also lead to the same conclusion. Upon citation of Delaunay-Belleville, the reference was avoided by the statement, "Delaunay does not show an eight cylinder 'V' type motor. Hence he cannot meet claims that call for manifold passageways connecting two cylinders of a bank which have non-immediately successive firing orders. He is not working with the same problem. Delaunay's separate manifolding is for the purpose of preventing contemporaneous pulling on the same fuel. The applicant is not interested in this. This happens in the construction shown in Fig. 2 of applicant's drawings."

Delaunay-Belleville undeniably taught that whatever arrangement of cylinders might be adopted or whatever crankshaft might be used, manifolding should be provided for in a manner to avoid suction periods less than 180 degrees apart for cylinders drawing from the same carbureter. It appears that the Ford V–8 intake valve starts to open 9½ degrees before top dead center and is closed at 54½ degrees past bottom dead center of the intake stroke of the piston. There is

therefore a substantial overlap of inlet valves opening. In other words, two cylinders are in a position to receive fuel simultaneously. Whether this overlapping results in fact in simultaneous suction in the defendant's construction is not clear. Defendant's witnesses testified that it is an absolute physical certainty that the intake period in defendant's engine never exceeds 180 degrees under any conditions. Plaintiff's witnesses assumed the possibility of simultaneous suction but conceded that no tests had been made to determine the accuracy of this assumption. However, whether simultaneous suction actually occurs or not, defendant's construction does not, in the view of the court, infringe the claims relied upon. Claim 1 defines a construction wherein the manifolding is divided into passage-ways so that the end of a single passage-way connects only cylinders having a non-immediately successive firing order, while claim 2 designates manifolding arranged and divided so that there are passage-ways each of which leads to a plurality of cylinders in a bank. Defendant's system of manifolding is determined by the fact that it employs a double 90 degree crankshaft wherein the two throws at the opposite ends of the shaft are in the same plane and the two intermediate throws are in the same plane but at 90 degrees to the other throws. Defendant employs a dual carbureter which in mechanical effect constitutes two independent carbureters with two separate and independent manifolds, one serving one group of four cylinders and the other serving a second group of four cylinders. Each of these separate manifolds has four distinct passage-ways leading from the fuel mixing means to the cylinders. Each passage-way leads to but a single cylinder. No construction is found which can properly be designated as the end of a single passage-way "which connects only cylinders having a non-immediately successive firing order" as defined in claim 1, or as being divided so that there are passage-ways "each of which leads to a plurality of cylinders in a bank", as defined in claim 2. Nor is there any construction which can properly be defined as a "single manifold reaching to all the cylinders and crossing from one bank to the other at the center, said manifold having a pair of partitions", as specified in claim 3.

The constructions illustrated in the Goodrich patent by Figure 2 and Figure 5 show a system of four separate manifold passage-ways each passage-way being connected at its end to a pair of adjacent cylinders located at the end of each bank. It appears to the court that defendant has followed in substance the teachings of Delaunay-Belleville that for the purpose of avoiding simultaneous or overlapping suction strokes, the fuel should be fed to the motor by two or more separate carbureters each feeding a certain number of cylinders by independent piping, the cylinders being selected so that the successive intake periods and consequently the explosions succeed each other at intervals of at least 180 degrees.

It is also to be noted that the claims of the patent sued on are for combinations. That the omission of one element of a combination claim avoids infringement of that claim, whether or not the omitted element was essential to the combination, unless an equivalent is substituted, is a principle which has long been recognized. See Fay v. Cordesman, 109 U. S. 408, 3 S.Ct. 236, 27 L.Ed. 979; McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800. A patentee is not entitled to claim all structures which exercise the desired function but only those which he himself invented, and a device which produces the same result but in a substantially different manner than described in the patent is not an infringement. It is the view of the court that even if identity of function be conceded, there are such substantial differences in manner of operation as to fully warrant a finding that plaintiff has not sustained the burden of proving infringement.

The foregoing opinion is adopted by the court as its findings of fact and conclusions of law and is hereby made a part of the record.

A decree in conformity with the foregoing opinion may be presented for signature on or before September 8th, 1935.