## FAY and Others *v.* CORDESMAN and Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

Argued November 14th, 1883.—Decided December 3d, 1883.

### *Patent.*

Claim 4 of reissued letters patent No. 1527, granted to John Richards, August 15th, 1863, for a "guide and support for scroll-saws," the original patent, No. 35,390, having been granted to him, May 25th, 1862, for an "improved guide and support for scroll-saws," namely, "4. An anti-friction guide which is adjustable so as to accommodate different thicknesses of saw-blades, and to compensate for wear, in combination with the upper portion of a web saw-blade, substantially as set forth," does not cover an arrangement in which a band-saw is used, passing over wheels, and running constantly in one direction, towards the table on which the stuff lies, and having a tension over the peripheries of the wheels.

Claim 5 of said reissue, namely, "5. The combination of the anti-friction saw-support and guide, or the equivalent thereof, with an adjustable guard, or its equivalent, substantially as and for the purpose set forth," is not infringed by an arrangement in which such a band-saw is used, and the guard does not hold down the stuff against the upward lifting action of the saw, because the saw is constantly passing downward.

The claim of letters patent No. 78,880, granted to J. A. Fay & Co., June 16th, 1868, for an "improvement in guides for band-saws," on the invention of John Lemman, namely, "The combination of the roller *b* with fixed lateral guides, *c c c*, one or more, arranged and operated substantially in the manner and for the purposes specified," is for the combination of an anti-friction smooth faced wheel to support the back or thin edge of the saw, and to have lateral adjustment, presenting different points to wear, with the fixed guides, and is not infringed by an arrangement in which the wheel has two grooves in it, in one of which the saw runs, and in the other of which it can be made to run by lateral adjustment.

Claim 1 of letters patent No. 120,949, granted to J. A. Fay & Co., November 14th, 1871, for an "improvement in band-sawing machines," on the invention of William H. Doane and William P. McKee, namely, "1. The frame A, A', A", in combination with the lower arbor-bearing, said frame being constructed as herein described, with a depression, A''', permitting the ready removal of the arbor, as explained," is not infringed by an arrangement in which the depression does not leave exposed a seat which is entirely open upward; and the arbor-bearing cannot be removed without detaching the pulley from the arbor.

Claim 2, namely, "2. The arrangement of frame A A' A" A''', and of the horizontally and vertically adjustable arbor-bearing C, D, D', E, E', G, H,

A," is not infringed by an arrangement which does not have the frame and depression of claim 1, or the elements D D', or the same or equivalent means of adjusting such arbor-bearing either horizontally or vertically.

Claim 3, namely, "3. The arrangement of step or saddle K and its contained box or bearing L L'," covers, as an element of the arrangement, among other things, a spring which carries the weight of the saddle, and gives an elastic tension to the saw, and is not infringed by an arrangement in which there is a rigid saddle and no spring.

Claim 4, namely, "4. In combination with the upper arbor, L', the lower arbor-bearing, E, adjustable both vertically and horizontally, as shown and described and for the purpose set forth," in not infringed by an arrangement which does not infringe claims 2 and 3.

Bill in equity for infringement of a patent.

*Mr. Robert H. Parkinson* for the appellants.
*Mr. E. E. Wood* for the appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This suit in equity was brought for the infringement of three several letters patent. The first is reissue No. 1,527, granted to John Richards, August 25th, 1863, for a " guide and support for scroll-saws," the original patent, No. 35,390, having been granted to him May 27th, 1862, for an " improved guide and support for scroll-saws." The specification of the reissue is as follows, including what is inside of brackets and what is outside of brackets, omitting what is in italic:

" To all whom it may concern: Be it known that I, John Richards, of Columbus, in the county of Franklin, and State of Ohio, have invented a new and useful [method of guiding and supporting] *combined guide, guard and support for* scroll-saws ; and I do hereby declare that the following is a full, clear and exact description of [one practical means of carrying out my invention] *the same*, reference being had to the accompanying drawings forming part of this specification, in which [Figure] *Fig.* 1 is a perspective view of a portion of [a] *the* table and [a] *the* saw-blade [of a 'scroll saw-mill,' with my invention applied to the same.] *and my improved upper combined guide, guard and support.* [Figure] *Fig.* 2, a longitudinal section of the same connected to the suspended stud of the building. [Figure] *Fig.* 3 is a horizontal section [through the guide and support.] *in the line x x, of*

*Fig.* 2. [The same] *Similar* letters of reference [where used] in [different] *the several* figures indicate corresponding parts. [It has long been a desideratum to obtain a scroll saw-mill which will work successfully while the upper end of the saw blade is left free from a sash or upper straining device ; and this has never been attained until the development] *The nature* of my invention [which] *under this patent* consists, [1st, in working the saw at a point above the table in a groove which is enclosed by anti-friction material, such as steel, polished iron, or glass, or any other known and suitable metal or substance, the upper end of the saw being disconnected from any upper suspender or sash, but supported and guided at its back edges and at its sides or broad faces, and its lower end connected to any mechanical device that will produce the desired motion in the saw. It consists, 2d, in an adjustable guide and support whereby different thicknesses of scroll or web saw may be used at will. It consists, 3d, in attaching the anti-friction guide and support to an adjustable device which constitutes a guard to hold down the stuff being sawed, and also insures a support of the saw at the point near where the sawing is performed as well as above this point. My principle of operating a scroll or web saw must not be confounded with the 'muley saw,' as in the 'muley saw' it is common to employ guides attached to the saw, such guides running in or upon bearings independent of the saw plate, whereas with the web or scroll saw worked according to my discovery, the back of the blade or plate is supported upon a hardened steel or other durable anti-friction surface, and is guided laterally by similar surfaces, so that the saw is supported and guided without any means of tension being employed. Furthermore, 'muley' saws are supported at each end by cross-heads, and only in the centre by lateral guides; and a saw must be employed that is strong enough in its cross-section to stand the work. Now, with my plan, I support the saw down to the top of the wood being sawed, which is a new thing in this class of saw-mills, and enables me to use small, light saw blades. Previously to my discovery of running the upper end of the web or scroll-saw in frictional contact with an upper guide, it was deemed an impracticable thing, and it is now only by practical demonstration and long use that saw-mill men are convinced that such method of working scroll or web-saws will not cut through and rapidly wear out the guide.

The non-destruction of the guide in a short period of time, although the pressure upon it is immense, is due to the fact of the guide being of hardened steel or other smooth, hard material, over which the saw-plate glides with but little frictional wear.] *in the guide and back supporting bars or plates in connection with the sliding guard, the same constituting a combined guide, guard .and support for the free or disconnected upper portions of a scroll- saw blade.* To enable others skilled in the art to make and use my invention, I will proceed to describe [one practical means in which I have embodied it with great success; but, in doing so, I do not wish to be understood as limiting myself to these mechanical devices in themselves, as the principle may be embodied in various other means and still not depart from the discovery embodied in machinery that I desire to patent.] *its construction and operation with reference to the drawings.* [Not using] *I do not·use* a sash [or] *nor* other means of straining the saw S, [I] *but* fasten the lower end of the [blade] *same* to the upper end of a stock or slide, S', of [a] *the* pitman, by a set screw, S², or [I may otherwise connect this end of the blade to a device which will properly operate the saw. The] *in any other similar manner, and have its top or* upper [end of the saw] *portion disconnected* above the table [T,] *T.* [I leave entirely disconnected, but in order to steady or guide and support this free end during the sawing operation, I attach a grooved steel guide to a] *The said upper portion of the saw is supported and guided by means of the two parallel bars a a, and the angular plate b. The bars have a lateral adjustment to accommodate saws of different thicknesses, their purpose being to keep the saw in a true vertical line, and to keep it from twisting, while the office of the back plate, b b', is to support the saw against the strain of the stuff on the teeth, when the work is being shoved against it. The guides a a, and back plate b b', are all made of hardened steel, to prevent friction and wear. This device a a b b' is fastened to the lower end of the sliding* strip or *guard piece* A, [other device which will answer as a firm support to the guide, and as a guard to keep down the lumber being sawed. The device A is attached to a] *which is fitted in a grove of a suspended* stud [or timber] B, of the building, [and is better if made adjustable by means of a slot and clamp-bolt, such as designated by the letters *e c d;* but other known means for adjusting this device may be adopted. The guide, as shown, is formed of three parts, to wit,

a black plate, $b$, and two side plates $a$, $a$, which latter are bolted or screwed firmly to the former, as shown. The slots S through which the bolts $f f$ pass are large enough to allow the plates $a$ $a$ a slight lateral adjustment whenever it is desired to use a saw with a greater thickness or a thinner saw. The same end, viz., the formation of a steel guide, or a guide of hard anti-friction surface, would be attained if a groove was formed in a thick steel plate, or other hard substance, except the advantage of accommodating saws of various thicknesses. I believe I am the first to use the grooved anti-friction guide, as well as the first to have the groove variable in width, and, therefore, I do not confine myself to adjustable guides and supports. The office of the back part of the groove or guide is to support the saw against the strain of the timber on the teeth when the work is being shoved against it, while the office of the lateral portions of the groove or guide is to keep the saw in a true vertical line and prevent it from twisting. The office of the guard A, which extends down nearly to the top of the table, is to hold down or prevent flying up of the ' stuff ' or timber being sawed, and at the same time bring the supporting guide to the saw right down to the place where the sawing is being performed, and thus insure the most perfect operation as well as an effectual supporting and guiding of the saw.] *and confined accordingly, as the thickness of stuff being sawed requires, by means of a clamping screw-bolt, c, and hand-nut, d. The bolt passes loosely through an oblong slot, e, of the guard-strip, but fastens firmly in the stud B, as shown. This guard rests in close contact, or nearly so, with the stuff being sawed, and keeps the same firmly down upon the table, while the device a a and b b' guides and supports the saw, as above stated. It will be seen that screw-bolts, f f, confine the plate b and bars to the strip or guard A, and that the holes or slots through the bars a are elongated so as to allow the guide-bars a a chance to move nearer together or further apart, to admit different thicknesses of saw blade. It will also be seen that the guides, by being attached to the strip, are adjusted with it up and down, the said up and down adjustment being allowed by the slot e'' of the strip ; and thus the angular part b' of the plate b aids also in holding down the stuff, it having a vertical kerf, g, cut in it, to admit the saw blade, and the guide and supporting plates or bars are always in proper position.* This [guard by its] arrangement *also* obviates the [heretofore] neces-

sity of leaving the upper end of the saw blade above the table unsupported and unguided, as it allows of the work or [timber] *stuff* being freely turned while the sawing is progressing, a clear open space between the guard and the table being left. [In the drawing I have shown the lower end of the guide forming an angle ; this is to give a larger guard surface. This angular portion has a kerf, *g*, cut in it, to admit the saw plate to the back of the guide. I, however, do not limit myself to this form of guide.] *The plate b might be made without the angular part b', but not answer so good a purpose. I do not claim operating a scroll-saw without straining, nor do I claim the application of lateral guides to saws ; neither do I claim an adjustable guard to prevent the stuff rising with the saw."*

Reading, in the foregoing, what is outside of brackets, including what is in italic, and omitting what is inside of brackets, gives the text of the original specification. The original patent contained one claim, as follows :

"The guide bars, *a a*, and the back plate *b*, in connection with the sliding guard-strip A, the same constituting a combined guide, guard and support for the top of a scroll-saw, and operating substantially as herein described."

The reissue contains five claims, as follows :

"1. Running the upper portion of a web or scroll-saw above the table, in a groove of an anti-friction guide and support, substantially as and for the purpose described. 2. Operating practically an unstrained web or scroll-saw, by combining with such saw-mills an upper anti-friction guide, which supports the back of the saw-blade, and also sustains the saw-blade at its sides or faces, substantially as set forth. 3. The use of anti-friction guides as a substitute for straining devices, in combination with web or scroll saw-blades, the guide to be raised and lowered to suit the thickness of the stuff, substantially as set forth. 4. An anti-friction guide which is adjustable so as to accommodate different thicknesses of saw blades, and to compensate for wear, in combination with the upper portion of a web-saw blade, substantially as set forth. 5. The combination of the anti-friction saw support and guide, or the equivalent thereof, with an adjustable

guard, or its equivalent, substantially as and for the purpose set forth."

Infringement of only claims 4 and 5 of the reissue is alleged. It is apparent, in reading the specification of the original patent and that of the reissue, that Richards contemplated the use of his improvements only in connection with a saw-blade the upper end of which was free from any suspender or sash, and the lower end of which was so connected with mechanism as to obtain the desired motion in the saw. Claim 4 of the reissue claims, as an element in the combination covered by that claim, "the upper portion of a web saw-blade." The saw-blade shown in the drawings, and the only saw-blade which can have an upper portion capable of being free or disconnected, in the sense in which those words are used, is a reciprocating saw-blade, actuated from below, and alternately pushed and pulled. The specification of the reissue states that Richards' saw is supported and guided "without any means of tension being employed." The defendants use a band saw, which is an endless saw, passing over the wheels, and running constantly in one direction, towards the table on which the stuff lies, and having a tension over the peripheries of the wheels. For this reason, the defendants do not need, nor do they have any guard which performs the function of the guard embraced as an element in the combination covered by claim 5 of the reissue, of holding down the stuff against the upward lifting action of the saw, because the saw is constantly passing downward. There is, therefore, no infringement of either claim 4 or claim 5.

The second patent sued on is No. 78,880, granted to J. A. Fay & Co., June 16th, 1868, for an "improvement in guides for band-saws," on the invention of John Lemman. The specification says:

"Figure 1 is a front elevation of one of my improved guides; Figure 2 is a side elevation of the same; Figure 3 is an elevation of the anti-friction roller $b$, removed from the guide; and Figure 4 is a partial plan, showing the manner of adjusting the lateral guides. Similar letters of reference in the different figures indicate corresponding parts. In operating endless saws, guides are

needed both above and below the wood. As is well known, the high speed at which these saws are driven, and the small amount of surface presented to the guide from the edge of the saw plate, cause fixed guides to wear away very fast, even if made of hardened steel or glass, particularly when heavy sawing is done, and the strain of the feed falls on the saw. Rolling guides, while they have partially overcome the difficulty of friction and wear on the back of the saw, cannot be constructed to give a proper lateral support to the saw, as will hereafter be alluded to. The object of the invention here illustrated is to obviate these several difficulties, and give important advantages in operating saws of this kind. Its nature consists of a combination of anti-friction rollers and fixed guides, the first to support the back or thin edge of the saw, and to have lateral adjustment, presenting different points to wear; the fixed guides as a lateral support, and so constructed as to accommodate saws of different widths, as hereinafter explained. To enable others skilled in the art to make and use my invention, I will proceed to describe its mode of construction and the manner of operating the same, with the aid of the drawings. $a$ is a frame or support for the guides. It is cored out to receive the wheel $b$, with room for lateral adjustment. On the top is a cylindrical extension, $h$, intended to be connected to a bar, on which the whole structure is adjusted up and down, to suit the thickness of the wood being sawed. $b$ is an anti-friction wheel, of hardened steel or other suitable material, mounted on an axis, $f$, as shown in Fig. 3, and by red lines in Fig. 1. This axis has conical bearings formed in the piece $g$, which allows of compensation for wear; and by loosening the screws $s$ $s$, the wheel $b$ and bearings $g$ $g$ can be adjusted laterally, so as to bring different points of the periphery of wheel $b$ in contact with the saw. $c$ $c$ $c$ are lateral guides to keep the saw from turning and in a true line. These guides are so arranged that two or more of them can be used and the others removed or adjusted to receive a narrow saw, as shown in Fig. 4. The holes through which the screws $d$ $d$ pass are slotted, as shown by red lines, Fig. 1. E is a section of a band-saw, sufficiently wide to allow of all the plates, $c$ $c$ $c$, being used. The wheel $b$ is so arranged as to barely pass through the plate $m$, and come in contact with the saw E. Oil-holes are formed at $i$ $i$, Fig. 1, communicating with the bearings of axis $f$, as shown in Fig. 1. The operation will be readily understood. Having thus

explained the nature and objects of my invention, I do not claim the use of an anti-friction roller applied to the back of the saw; neither do I claim the fixed lateral guides." There is only one claim in these words : "The combination of the roller $b$ with fixed lateral guides, $c\ c\ c$, one or more arranged and operating substantially in the manner and for the purpose specified."

This patent stands on very narrow ground. Anti-friction rollers applied to the back of the saw are disclaimed and were old. Fixed lateral guides, for the faces of the saw, are disclaimed and were old. The text of the specification limits the invention to a combination of an anti-friction wheel to support the back or thin edge of the saw, and to have lateral adjustment, presenting different points to wear, with fixed guides to support laterally the faces of the saw, the fixed guides being so constructed as to accommodate saws of different widths. The anti-friction wheel, by means of its conical bearings, can be advanced nearer, as it wears, to the back edge of the saw, and the wheel and its bearings are capable of being adjusted laterally, so as to bring different points of the periphery of the wheel in contact with the back edge of the saw. The arrangement of fixed guides referred to is manifestly that described in the Richards patent. The only point of invention dwelt on in the Lemman specification is the lateral adjustability of the wheel, which, though it is to be an anti-friction wheel, and so is to be made of hardened steel or other suitable material, will still wear away on the surface presented to the edge of the saw; and the lateral adjustment enables different points of the periphery of the wheel to be brought into contact with the saw, so as to present different points to wear from time to time. Thus the entire width of the periphery of a wheel may be utilized. The defendants have used a wheel which has two grooves in it, in one of which the saw runs and in either of which it can run. The wheel can be adjusted laterally, so as to bring the one or the other of the two grooves into use. But there is no adjustment to bring different points of the periphery of a smooth-faced wheel into use. In view of the state of the art, and of the

limitations of the specification, there has been no infringement. Merely adjusting a wheel laterally so as to give it different positions at different times was a thing well known to mechanics; and running the back edge of a saw in a groove in a roller existed in the prior Closterman device.

The third patent sued on is No. 120,949, granted to J. A. Fay & Co., November 14th, 1871, for an "improvement in band-sawing machines," on the invention of William H. Doane and William P. McKee. Claims 1, 2, 3, and 4 of this patent are alleged to have been infringed, there being seven claims. The specification, so far as it is material to be cited, says:

"The first part of our invention relates to an improved form of supporting frame and of the upper and lower arbor-bearings, whereby the said bearings, with their inclosed arbors, are made easily accessible and removable for inspection and repair, and relatively adjustable, so as to be brought into exact line, and otherwise so regulated as to insure the perfect operation of the saw, as hereinafter explained. . . . Figure 1 is a perspective view of a machine embodying our improvements. Figure 2 is a vertical section of the machine in the plane of its arbors. . . . Figure 5 is a plan of the lower arbor-bearing. The frame which supports the operative parts of our machine consists of a single casting of the peculiar form here represented, that is to say, a base, A, from whose rear end there rises the main column or standard A$^1$ (supporting the upper arbor-bearing and saw guide), and from whose front end there rises a shorter column or pedestal, A", which latter supports and is surmounted by the bench or table B, on which the stuff rests. The depression which intervenes between the columns A· and A" leaves exposed a seat, which extends below the centre of the lower arbor and is entirely open upward, which seat forms an accessible and convenient place for the attachment, inspection, and regulation, and, when necessary, the ready detachment, of the lower arbor-bearing, which bearing is constructed as follows: Bolted or otherwise securely fastened to the top of base A is a pillow-block, C, having vertical flanges $c\ c^1$. The flanges $c\ c^1$ are traversed near their front end by two co-axial horizontal bolts D D$^1$, which, entering orifices in the box or bearing E E$^1$ of the lower pulley-arbor F, constitute a pivoted fasten-

ing for the said bearing. A set-screw, G, tapped in the bottom of
the pedestal C, and pressing upwards against the box E E¹, en-
ables its adjustment and retention to horizontality, or such approxi-
mation thereto as may be desired. Other set-screws, H H¹, passing
horizontally through the flanges $c$ $c^1$, near their rear end, enable
the adjustment and retention of said box to a common vertical
plane with the upper arbor. The end of the lower arbor most re-
mote from the pulley I carries the driving-pulley J. It will be
seen that, on the loosening of four screws, the entire lower arbor
and journal-box may be lifted bodily upward and detached from
the machine, without detaching the pulley from the arbor. The
upper part of the standard A¹ is curved forward, as represented,
and has a slot, $a$, to hold and guide to a vertical path a step or sad-
dle, K, to which is pivoted a lug, $l$, that depends rigidly from
the upper arbor-bearing L L¹. The saddle K has a horizontal
extension, $k$, which bears on the point of a screw, M, occupy-
ing a nut, T, that rests on a spring or cushion, O, in the bot-
tom of the slot $a$. The screw M, being turned to the right
or left elevates or depresses the upper arbor-bearing, and
in so doing, causes the proper tension to be imparted to the saw.
Another screw, N, that is tapped in the lug $l$, bears against the
face of the saddle K, and enables the regulation, or angular adjust-
ment, in a vertical plane, of the upper arbor-bearing. The above-
described capacity for angular adjustment of the band-pulley arbors
in their common plane enables the operator to confine the path of
the saw nicely to the middle of the pulleys, or to shift it more or
less toward the front or back portions of their peripheries, so as to
cause all parts to be equally worn. The spring O, while co-acting
with the screw M to preserve the proper tension of the saw, also
imparts an elastic and yielding quality to the tension.  .   .   .
While preferring the described relative positions of the pivot-screws
D D¹, and latterally adjusting screws H H¹, we do not confine our-
selves thereto, as the pivot-screws may be situated near the rear
and the adjusting screws near the front portion of the box." The
first six claims are as follows : " 1. The frame A A¹ A", in combi-
nation with the lower arbor-bearing, said frame being constructed
as herein described with a depression, A"', permitting the ready
removal of the arbor, as explained.  2. The arrangement of frame
A A¹ A" A"', and of the horizontally and vertically adjustable
arbor-bearing C D D¹ E E¹ G H A.  3. The arrangement of step

or saddle K and its contained box or bearing L L¹.   4. In combination with the upper arbor L¹ the lower arbor-bearing E, adjustable both vertically and horizontally, as shown and described and for the purpose set forth.   5. In combination with the lower arbor, the upper arbor-bearing, adjustable in a vertical plane by means of the screw M, nut T, and spring O, as and for the purpose designated.   6. The combination of the slotted standard A¹ *a*, saddle K *k*, arbor-bearing L L¹ *l*, nut T, screws M N, and spring or cushion O, as shown and described, for the purpose set forth."

As to claim 1, it is for a combination of the three-sided frame A A' A" with the lower arbor-bearing, when the frame is constructed with a depression, A"', intervening between the columns A' and A", which leaves exposed a seat which is entirely open upward, so as to give convenient access to the lower arbor-bearing, to attach, inspect, and regulate it, and also detach it, with its journal-box, by lifting the arbor and journal-box bodily upward, without removing the pulley from the arbor.   In the defendants' machine the seat is not entirely open upward, and there is a hole through the body of the frame to receive the lower arbor-bearing, and the arbor-bearing cannot be removed without detaching the pulley from the arbor.   This claim is not infringed.

As to claim 2, it is for the arrangement and combination of the three-sided frame A A A" and the depression A"' with the horizontally and vertically adjustable arbor-bearing, consisting of the pillow block or pedestal C, the two co-axial horizontal bolts, D D', the box or bearing E E', the vertical set screw G which adjusts the box E E' to horizontality, the horizontal set screw H which adjusts the box E E' to a common vertical plane with the upper arbor, and the base A which carries the pillow block or pedestal C.   All these features in combination are made necessary in claim 2.   It claims a combination of the frame and depression of claim 1 with the special construction of arbor-bearing set forth.   The defendants do not have the frame and depression of claim 1, as already shown, and thus do not have that element of the combination covered by claim 2.  Moreover, the co-axial bolts D D' are a necessary feature of the peculiar arbor-bearing of the patent, and no such bolts are

found in the defendants' machine; and, if it has any means of adjusting the lower arbor-bearing, either horizontally or vertically, in the sense in which such adjustment is described in the patent, it has not the same means or equivalent means to what is found in the patent.

As to claim 3, it is for the arrangement of the step or saddle K with the upper arbor-bearing L L' contained in it. What is the arrangement of the step or saddle K in connection with the arbor-bearing? The saddle moves through vertical slide-ways and it has pivoted to it a lug, $l$, which depends rigidly from the arbor-bearing. A screw N tapped into the lug $l$ bears against the face of the saddle, so as to allow of the adjustment in a vertical plane of the upper arbor-bearing. The saddle has also a horizontal extension, $k$, which bears on the point of a screw, M, occupying a nut, T, which rests on a spring or cushion, O, in the bottom of the slot. By turning the screw M to the right or the left the upper arbor-bearing is elevated or depressed, and thus more or less tension is given to the saw. The spring O gives an elastic character to the tension. The effect of the arrangement or combination is to give an elastic vertical adjustment and also a horizontal adjustment. The whole object of the saddle with the lug $l$ and the extension $k$ is to adjust the arbor-bearing up and down and sidewise and at the same time give an elastic tension to the saw. The spring carries the weight of the saddle. There can be no operative arrangement of the saddle with the arbor-bearing which does not include the lug $l$, the screw N, the extension $k$, the screw M, the nut T, and the spring O. These are all elements in the arrangement or combination covered by claim 3. The spring is essential in the patent, as a part of claim 2. The defendants have a rigid saddle, and no spring. The fact that the spring is an element in claims 5 and 6 does not prevent its being an element in claim 3.

There being no infringements of claims 2 and 3 there is none of claim 4.

The claims of the patents sued on in this case are claims for combinations. In such a claim, if the patentee specifies any element as entering into the combination, either directly by

the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality. *Water Meter Company* v. *Desper*, 101 U. S. 332; *Gage* v. *Herring*, 107 U. S. 640.

*The circuit court decreed a dismissal of the bill, and the plaintiff having appealed, the decree is affirmed.*