## WATTERS et al. v. KNY–SCHEERER CORPORATION.
### No. 72.

Circuit Court of Appeals, Second Circuit. Dec. 11, 1933.

Clarence G. Campbell, of New York City, for appellant.

Mock & Blum, of New York City, for appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This patent relates to an apparatus for use by hospital nurses in emptying and washing bedpans. The bowl or hopper into which the contents of the pan is to be emptied connects with the sewer and is capable of being flushed by a properly directed stream of water under the ordinary pressure of the water supply of the hospital. By pressure of the foot upon a pedal, a cover of the hopper, nearly vertical, but tilted toward the rear at the top, is caused to swing down to a horizontal position so that the inside of the cover forms a shelf upon which the bedpan may be set between two pairs of curved arms which hold it firmly in place. The cover is then elevated by hand, and, when closed, water is turned on and so directed through a perforated nozzle within the hopper as to wash the bedpan both inside and out. The cover is arranged to fit tightly when closed so as to prevent the escape of water or air, and a vent pipe carries away noxious fumes. The cover is also shown as locked by a latch bolt which is released by operation of the pedal. Undoubtedly the machine is more sanitary, more economical of space in a hospital room, and more speedy in operation than prior devices. Indeed, the validity of the patent is conceded. At the trial the only defense asserted was noninfringement of any of the twelve claims

in suit, and on this appeal the only error relied upon is the finding of infringement.

Two types of machines manufactured by the appellant are charged to infringe, Exhibits A and B. They differ between themselves only in that Exhibit B has a soft spring which aids gravity in holding the cover closed against the force of the washing spray. Each has a baffle plate attached to the inside of the cover and forming the shelf for the bedpan. The weight of this plate acts by gravity, when the cover is in its rearwardly tilted, closed position, to keep it closed. The differences between the defendant's devices and the washer of the patent in suit, as pointed out by the defendant's expert, are (1) that the defendant's device has no lock for the cover; (2) that the cover is not tight against the washer body; (3) that there are not two pairs of curved arms to hold the pan in place upon the cover; and (4) that the exact pedal means of the patent are not used. The District Court held that none of the differences was outside the range of equivalents to which the patent was entitled. This is challenged upon the Patent Office history as shown by the file wrapper.

The first attempted distinction may be most conveniently discussed in connection with claim 2, which reads as follows:

"2. A bed pan washer comprising a vertical hopper set within a wall and having its face inclined rearwardly at the top, a cover hinged on a horizontal axis to swing over the face of the hopper in one position and present a shelf receptive of a bed pan when in another position, and pedal means for first releasing and thereafter initially actuating the cover permitting it to drop by gravity into a horizontal position."

It is urged by the appellant that this specifies three distinct steps in the operation of the cover by pedal means: (1) to release it, that is, to withdraw the latch; (2) to initially move it just beyond the vertical position; and (3) to permit it to drop by gravity. As originally presented, this claim called merely for "means for actuating the cover." To meet objections of the Examiner, the specific limitations which divide the operation into three steps were introduced by amendment. A patentee may not broaden his claim by dropping an element which he was compelled to include in order to secure allowance. Shepard v. Carrigan, 116 U. S. 593, 597, 6 S. Ct. 493, 29 L. Ed. 723; Deitel v. Unique Specialty Corp., 54 F.(2d) 359 (C. C. A. 2). Since the claim recognizes "releasing" as something preceding "initially actuating" the

cover, we think the defendant is right in the contention that "releasing" means "unlatching," and that infringement is avoided by omitting the latch.

But it does not follow that the word "releasing" necessarily has so limited a meaning in the other claims. Claim 3, for example, calls for "foot operated means for releasing the cover, said cover opening by gravity upon its release." Here it is clear that "releasing" includes movement of the cover far enough for gravity to operate, which it cannot do until the rearwardly tilted cover passes the vertical line. As to claim 3, therefore, the absence of a latch cannot avail the defendant.

Similarly as to claim 1, which requires "means operated by said pedal to release and lower said cover." Lowering does not occur until the cover has been overset so far that gravity can come into play. Hence we think "to release" includes movement to that point, and that the defendant accomplishes the same result by substantially the same means.

Claim 4 calls for "pedally operated means for releasing the cover, and means for retaining the cover when closed." The means of the patent for retaining the cover when closed is its rearwardly tilted position plus the latch. But the defendant cannot escape infringement by omitting the latch and accomplishing the same result by the added weight of its baffle plate, or of its baffle plate plus a spring. These are within the range of equivalents which may fairly be accorded the patent, even though it be but a combination improvement. The same is true of claim 5.

Claims 8, 12, 13, and 14 all speak of means for locking or automatically locking the cover. Holding the cover closed by the weight of the baffle plate, as in Exhibit A, cannot properly be deemed a locking. While the case is not so clear as to Exhibit B, which adds to gravity the pressure of a spring, we are of opinion that that also escapes infringement. Similarly claim 20, which calls for "a spring locking device," is not infringed.

The second alleged distinction between the defendant's machines and that of the patent need not be considered, as the claims which require the cover to fit tight against the washer body we have held not to be infringed for other reasons.

The third distinction relates to the means for holding the pan upon the cover. Claim 19 is typical:

"19. A bed pan washer having a door forming a shelf when opened and pairs of inreaching curved arms fixed at one of their

ends on opposite sides of said shelf and extending immovably thereover for holding a bed pan in position on said shelf."

The defendant has joined the upper ends of the arms by longitudinal bars. These do not make the slightest difference in operation, as the defendant's expert conceded. The attempted distinction is the merest subterfuge. The novelty of the invention resided in arranging a holding means which would not overlie the opening of the bedpan, as did, for example, the strap in the German patent to Ehmann. This claim is infringed.

The fourth alleged distinction is involved in claim 18, which requires "a pedal movable in a straight line to initially actuate" the cover. It does not appear that this limitation was introduced to avoid any specific reference. The court below found that the pedal of the defendant's device is operated in substantially a straight line, and that any slight deviation created no difference in function or in method of operation. Infringement was properly ruled as to claim 18.

The decree must be modified. Claims 2, 8, 12, 13, 14, and 20 are not infringed. As to these claims, the decree is reversed. Claims 1, 3, 4, 5, 18, and 19 are infringed by both types of the defendant's machines. As to these claims the decree is affirmed. Costs in this court may be divided.