**JENSEN–SALSBERY LABORATORIES, Inc., v. O. M. FRANKLIN BLACK-LEG SERUM CO.**

No. 1013.

Circuit Court of Appeals, Tenth Circuit.
June 30, 1934.

Henry N. Ess, of Kansas City, Mo. (Thorpe & Thorpe, of Kansas City, Mo., T. M. Lillard, of Topeka, Kan., and I. N. Watson, of Kansas City, Mo., on the brief), for appellant.

A. J. O'Brien, of Denver, Colo. (M. E. Anderson, of Denver, Colo., and Jas. E. Smith, of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

The O. M. Franklin Blackleg Serum Company, hereinafter called Franklin Company, brought this suit against the Jensen-Salsbery Laboratories, Inc., hereinafter called Jensen-Salsbery, to enjoin infringement of patent No. 1,511,557, issued October 14, 1924, and for an accounting.

The patent is for a process for preparing blackleg bacterin. It is a vaccine used to immunize against symptomatic anthrax or blackleg, a disease to which herbivorous animals, chiefly cattle and sheep, are subject.

The process of the patent consists of three steps:

(1) A suitable liquid medium is obtained by grinding a meat substance and extracting the broth therefrom. Salt and peptone are added. Calcium carbonate and starch inclosed in a muslin sack are placed in this liquid medium, and it is sterilized.

(2) The medium is then inoculated with a freshly isolated culture of clostridium chauvei, the bacilli which cause blackleg, and the bacteria are grown in the liquid medium. After suitable growth the medium is strained through cotton or fine wire gauze to remove the coarser particles. A formalin solution is then added and the medium maintained at a temperature of about 45° C. for several days. The bacteria are thus killed without destroying their antigenic or immunizing properties.

(3) The resultant product is then treated to obtain the micro-organisms in suitable form for use as a bacterin.

As to such treatment the specification, after describing steps one and two, states:

"After the foregoing treatment, the culture is allowed to settle, most of the organisms settling out in a short time. The product is then treated in any suitable way to obtain the organisms in a form for use as a vaccine or bacterin. * * * One method of procedure is to decant the supernatant liquid to about 1/10th of its original volume, the remaining liquid containing the organisms being used as a vaccine. An alternative procedure is to centrifuge the organisms out of the media and dry them. The dry powder thus obtained is used for direct injection as a vaccine by suspending the same in suitable liquid suspension or, if desired, the dry powder can be made in the form of a pellet and used as a vaccine."

Claims 1 and 2 may be regarded as typical of the claims here involved. They read as follows:

"1. The method of preparing a blackleg vaccine which consists in growing blackleg organisms in a suitable culture media, adding a reagent to kill the organisms without destroying their antigenic properties, and treating the resultant product to obtain the organisms in suitable form for immunizing use.

"2. The method of preparing a blackleg vaccine which consists in growing blackleg organisms in a suitable culture media, treating the same after suitable growth with a formalin solution in a concentration sufficient to kill the organisms without destroying their antigenic properties, and treating the resulting product to obtain the organisms in suitable form for immunizing use."

Claims 3 to 9, inclusive, are set out in note 1.

The material portions of the specification are set out in note 2.

---

Note 1. "3. The method of preparing a blackleg vaccine which consists in growing blackleg organisms in a suitable culture media, adding a reagent to kill the organisms without destroying their antigenic properties, heating the solution, and treating the resulting product to obtain the organisms in suitable form for immunizing use.

"4. The method of preparing a blackleg vaccine which consists in growing blackleg organisms in a suitable culture media, treating the same after suitable growth with a formalin solution in concentration sufficient to kill the organisms without destroying their antigenic properties, heating the solution, and treating the resulting product to obtain the organisms in suitable form for immunizing use.

"5. The method of preparing a blackleg vaccine which consists in growing blackleg organisms in a suitable culture media, adding a reagent to kill the organisms without destroying their antigenic properties, heating the solution to a temperature not exceeding 50° C., and treating the resulting product to obtain the organisms in suitable form for immunizing use.

"6. The method of preparing a blackleg vaccine which consists in growing blackleg organisms in a suitable culture media, adding a reagent to kill the organisms without destroying their antigenic properties, heating the solution for period from 3 to 7 days to a temperature not exceeding 50° C. and treating the resulting product to obtain the organisms in suitable form for immunizing use.

"7. The method of preparing blackleg vaccine which consists in growing blackleg organisms in a suitable culture media, adding thereto a formalin solution of sufficient strength to kill the organisms without destroying their antigenic properties, heating the solution for a period of from 3 to 7 days at a temperature not exceeding 50° C., and treating the resulting product to obtain the organisms in suitable form for immunizing use.

"8. The method of preparing a blackleg vaccine, which consists in growing in a suitable liquid media under aerobic conditions a culture of blackleg organisms, adding to the culture after suitable growth a reagent to kill the organisms without destroying their antigenic properties, and treating the resultant product to obtain the organisms in suitable form for immunizing use.

"9. The method of preparing a blackleg vaccine which consists in growing blackleg organisms in a suitable culture media, adding thereto a reagent to kill the organisms without destroying their antigenic properties, and withdrawing a portion of the liquid from the media while retaining the organisms therein, whereby a concentrated solution adapted for use as a vaccine is obtained."

Note 2. "A suitable culture media is first prepared. This is done by grinding a quantity of suitable meat substance, preferably hog liver, and extracting the same with water, after which it is cooked and the broth pressed out of the pulp. The usual amount of peptone and salt are then added. * * *

The file wrapper discloses that original claim 2 read as follows:

"In a method of making blackleg vaccine, the steps which consist in inoculating into a suitable media a culture of blackleg organisms, treating the culture after suitable growth with a formalin solution and heating the product to a temperature not exceeding 50° C. whereby the organisms are killed but retain immunizing properties."

It will be noted that this claim is for a two-step process. Original claims 1, and 3 to 9, inclusive, covered a three-step process. Original claims 1 to 9 were rejected.

Claim 2 was then amended by inserting before the word "media" the word "liquid," and following the word "media" the phrase, "substantially free from solid matter." Like amendments were made to claims 1, and 3 to 7, inclusive, which still covered the three-step process.

A new claim 8, to take the place of original claims 8 and 9, was submitted. It read as follows:

"The method of preparing a blackleg vaccine, which consists in growing in a suitable liquid media under aerobic conditions a culture of blackleg organisms, adding to the culture after suitable growth a reagent to kill the organisms, heating the same to a temperature not exceeding 50° C. and treating the resultant product to obtain the organisms in suitable form for immunizing use."

Amended claims 1 to 8, inclusive, were rejected. They were then canceled, and claims 1 to 9 of the patent in suit were applied for and allowed.

Jensen-Salsbery prepares blackleg bacterin by a process consisting of two steps: (1) Growing the micro-organisms in a suitable culture medium, and (2) killing the micro-organisms with a reagent and heat. It does not employ any treatment to obtain the micro-organisms in a suitable form for immunizing use by decanting the supernatant liquid, or by centrifuging the micro-organisms and drying them, or any other similar treatment. It simply subjects the product resulting from the two-step process to the test required by the Department of Agriculture, and if it meets that test it places it in containers and distributes it for immunizing use.

The cause was submitted to a special master. In his report the master states:

"Does the addition of this admittedly non-essential statement and unpatentable third step in the patent, so differentiate plaintiff's process from defendant's process in making the same immunizing product, as to avoid infringement?"

The master states that the novelty of the invention lies in the discovery by Franklin that the micro-organisms could be killed with formalin without destroying their antigenic properties; that the third step was non-essential, and that there was no substantial or

---

"After the media is prepared as described, I place therein a cloth sack preferably made of ordinary muslin, which contains calcium carbonate and starch in suitable quantities. The starch acts to accelerate growth of the organisms and the calcium carbonate tends to stabilize or keep the hydrogen ion concentration near neutral and also apparently facilitates growth of the organisms. * * * The same media thus prepared is then sterilized in the usual manner.

"After the media has been prepared and sterilized as described, I inoculate the same with a purified culture of blackleg organisms. * * * After suitable growth of the organisms has taken place the media is strained through any suitable substance, such as cotton or fine wire gauze, which serves to remove therefrom the coarser solid particles. A formalin solution is then added to the liquid containing the culture. * * * The resulting product is then allowed to stand for several days, about 3 to 7, and during this period it is preferably kept at a temperature of approximately 45° C. as by means of a water

bath or in any other desired manner. The treatment with formalin results in killing the organisms in their vegetative and spore forms and this result is accomplished in less time and more satisfactorily if heat is employed as described. The killing of the organisms does not destroy their antigenic property. * * *

"After the foregoing treatment, the culture is allowed to settle, most of the organisms settling out in a short time. The product is then treated in any suitable way to obtain the organisms in a form for use as a vaccine or bacterin to be injected into the cattle and produce immunity from the blackleg disease. One method of procedure is to decant the supernatant liquid to about $\frac{1}{10}$ of its original volume, the remaining liquid containing the organisms being used as a vaccine. An alternative procedure is to centrifuge the organisms out of the media and dry them. The dry powder thus obtained is used for direct injection as a vaccine by suspending the same in a suitable liquid suspension or, if desired, the dry powder can be made in the form of a pellet and used as a vaccine."

essential difference between the process of the patent and the process employed by Jensen-Salsbery.

He found claims 1 to 9 valid and infringed, and recommended a decree accordingly.

From a decree confirming the master's report, adjudging claims 1 to 9 valid and infringed and directing an accounting, Jensen-Salsbery has appealed.

■■ Where an applicant for a patent on a mechanical combination or a process is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element in the combination or a new step in the process, he cannot, after the issue of the patent, broaden his claim by omitting the element or step he was compelled to include in order to secure his patent. If dissatisfied with the rejection, he should appeal therefrom, and where, in order to get his patent, he accepts one with a narrower claim, he is bound by it. Whether the action of the Examiner was right or wrong, the court may not inquire. The applicant having limited his claim by amendment and having accepted a patent with such claim, brings himself within the rules: that, if a claim to a combination is restricted to specified elements, or a claim to a process is restricted to specified steps or a series of acts, all must be regarded as material; that limitations imposed by the applicant, especially those added by amendment after a claim has been rejected, must be construed against the inventor and regarded as disclaimers; and that the patentee is thereafter estopped to claim the benefit of the rejected claim or such a construction of his amended claim as would be equivalent thereto.

The principles above stated have been applied more frequently to patents for combinations (note 3), but they apply equally to process patents. Note 4.

In Shepard v. Carrigan, 116 U. S. 593, 597, 6 S. Ct. 493, 495, 29 L. Ed. 723, the court said:

"Where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the patent-office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent."

In Royer v. Coupe, 146 U. S. 524, 532, 13 S. Ct. 166, 169, 36 L. Ed. 1073, the court said:

"On June 10, 1873, he put in a claim to the mode of preparing rawhides by the fulling operation and the preserving mixture. That claim was rejected by the patent office, and he withdrew it on October 29, 1873. Nor can he, under the present patent, claim as a new article of manufacture the rawhide thus prepared; for he made that claim on June 10, 1873; it was rejected, and he struck it out on October 9, 1873.

"It is well settled, by numerous cases in this court, that under such circumstances a patentee cannot successfully contend that his patent shall be construed as if it still contained the claims which were so rejected and withdrawn. Roemer v. Peddie, 132 U. S. 313, 317, 10 S. Ct. 98 [33 L. Ed. 382], and cases there cited. The principle thus laid down is that where a patentee, on the rejection of his application, inserts in his specification, in consequence, limitations and restrictions, for the purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it."

■ Every element of a combination or step in a process claimed is conclusively presumed to be material. The omission of one element, ingredient, or step of a combination claim avoids infringement of that claim, whether or not the omitted element, ingredient, or step was essential to the combination. Note 6.

Note 3. I. T. S. Co. v. Essex Rubber Co., 272 U. S. 429, 443, 47 S. Ct. 136, 71 L. Ed. 335; Shepard v. Carrigan, 116 U. S. 593, 597, 6 S. Ct. 493, 29 L. Ed. 723; Sutter v. Robinson, 119 U. S. 530, 541, 7 S. Ct. 376, 30 L. Ed. 492; Cimiotti Unhairing Co. v. American Fur Refining Co., 198 U. S. 399, 410, 25 S. Ct. 697, 49 L. Ed. 1100; Jesse E. Moore v. Frigidaire Corp. (C. C. A. 8) 71 F.(2d) 840, decided June 12, 1934; Dry Hand Mop Co. v. Squeez-Ezy Mop Co. (C. C. A. 5) 17 F. (2d) 465; Aleograph Co. v. Electrical Research Products (C. C. A. 5) 55 F.(2d) 106, 109; Doughnut Mach. Corp. v. Joe-Lowe Corp. (C. C. A. 4) 67 F.(2d) 135, 138; Watters v. Kny-Scheerer Corp. (C. C. A. 2) 68 F.(2d) 27, 29.

Note 4. Kennedy v. Solar Refining Co. (C. C. Ohio) 69 F. 715, 717; Royer v. Coupe, 146 U. S. 524, 532, 13 S. Ct. 166, 36 L. Ed. 1073; Walker on Patents (6th Ed.) § 399.

Note 6. Wichita Visible Gasoline Pump Co. v. Clear Vision Pump Co. (C. C. A. 8) 19 F.(2d) 435, 436, 437; Fay v. Cordesman, 109 U. S. 408, 420, 3 S. Ct. 236, 27 L. Ed. 979; Sargent v. Hall Safe & Lock Co., 114 U. S. 63, 86, 5 S. Ct. 1021, 29 L. Ed. 67; Yale Lock Mfg.

A claim of a process patent is not infringed where any one of the steps or series of acts, set forth in the claim as constituting the process, is omitted, unless some equivalent step or act is substituted for the one omitted. Note 7.

In Fay v. Cordesman, 109 U. S. 408, 420, 3 S. Ct. 236, 244, 27 L. Ed. 979, the court said:

"The claims of the patents sued on in this case are claims for combinations. In such a claim, if the patentee specifies any element as entering into the combination, either directly by the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality"

In Hall-Mammoth Incubator Co. v. Teabout (C. C. A. 2) 215 F. 109, 110, the court said:

"It may be that the claim was unnecessarily specific, that elements which are unnecessary are found there and that the apparatus will operate without these elements. Concede all this and it does not aid the complainant. Hall saw fit to include in his combination all the elements found in the claim. One who does not use that combination does not infringe."

In McClain v. Ortmayer, 141 U. S. 419, 425, 12 S. Ct. 76, 78, 35 L. Ed. 800, the court said:

"The principle announced by this court in Vance v. Campbell, 1 Black, 427 [17 L. Ed. 168], that, where a patentee declares upon a combination of elements which he asserts constitute the novelty of his invention, he cannot in his proofs abandon a part of such combination and maintain his claim to the rest, is applicable to a case of this kind, where a patentee has claimed more than is necessary to the successful working of his device."

Mr. Walker in his work on Patents (6th Ed.) § 399, says:

"No process patent is infringed where any one of the series of acts which constitute the process is omitted by the supposed infringer, unless some equivalent act is substituted for the one omitted."

In Kennedy v. Solar Refining Co. (C. C. Ohio) 69 F. 715, 717, the court said:

"A process patent, when involving a combination of different elements, is similar to a patent for a combination of mechanical devices. No infringement of the latter can be sustained unless every one of the constituent elements is employed."

It follows that the third step in the process must be conclusively presumed to be essential, and that Jensen-Salsbery did not infringe unless it employed some equivalent step.

The specification and claims of a patent constitute a contract between the United States and the patentee, and they should be read and construed together, not for the purpose of limiting, contracting, or expanding the claims, but for the purpose of ascertaining from the entire agreement the actual intention of the parties. Note 8.

Counsel for the Franklin Company contend that the word "treatment" used in the claims may be construed to mean the introduction of formalin to kill the micro-organisms, and that Jensen-Salsbery employs that step. But the claims are not subject to this construction. The second step in each claim is the addition of a reagent to kill the micro-organisms, and the third step is "treating the resulting product." The "resulting product" clearly relates to the product after the micro-organisms have been killed. A reference to the specification makes this clear. Further-

---

Co. v. Sargent, 117 U. S. 373, 378, 6 S. Ct. 931, 29 L. Ed. 950; McClain v. Ortmayer, 141 U. S. 419, 425, 12 S. Ct. 76, 35 L. Ed. 800; Hubbell v. United States, 179 U. S. 77, 80, 82, 21 S. Ct. 24, 45 L. Ed. 95; Hall-Mammoth Incubator Co. v. Teabout (C. C. A. 2) 215 F. 109, 110.

Note 7. Walker on Patents (6th Ed.) § 399; Kennedy v. Solar Refining Co. (C. C. Ohio) 69 F. 715, 717.

Note 8. Ottumwa Box Car Loader Co. v. Christy Box Car Loader Co. (C. C. A. 8) 215 F. 362, 373; Hudson Mfg. Co. v. Louden Mach. Co. (C. C. A. 8) 276 F. 527, 531; O'Brien-Worthen Co. v. Stempel (C. C. A. 8) 209 F. 847, 852; O. H. Jewel Filter Co. v. Jackson (C. C. A. 8) 140 F. 340; Fleischman Yeast Co. v. Federal Yeast Corp. (D. C. Md.) 8 F. (2d) 186, 202.

See, also, Benoit v. Wadley Co. (C. C. A. 7) 54 F.(2d) 1041, 1044; N. O. Nelson Mfg. Co. v. F. E. Myers & Bro. Co. (C. C. A. 6) 25 F.(2d) 659, 663; Kelly Well Co. v. Kirschke Concrete Well Co. (C. C. A. 8) 14 F.(2d) 274, 276; I. T. S. Rubber Co. v. Panther Rubber Mfg. Co. (C. C. A. 1) 260 F. 934, 938.

more, counsel undertake to construe the claims as though they read like claim 2 that was twice rejected. This they may not do.

Counsel for the Franklin Company further contend that the testing of the product for sterility after the second step is completed, and the placing of it in containers, is a treating of the resulting product to obtain the micro-organisms in suitable form for immunizing use. The New Standard Dictionary defines "treat" as follows: "To apply a special process to." A consideration of the specification leads to the conclusion that the word "treating" is used in that sense in the claims. Neither testing the resultant product nor placing it in containers is the application of a special process thereto; no change in the product is effected thereby.

We conclude therefore that the third step must be conclusively presumed to be an essential element in the process covered by claims 1 to 9, inclusive, that the Franklin Company is estopped from asserting that such claims should be construed as though they read like claim 2, that Jensen-Salsbery does not employ the third step or any equivalent therefor, and does not infringe such claims.

We deem it unnecessary to pass on the validity of the claims.

Reversed.