## HAYNES STELLITE CO. v. OSAGE METAL CO., Inc.

### No. 1882.

Circuit Court of Appeals, Tenth Circuit.

Dec. 30, 1939.

Rehearing Denied Feb. 10, 1940.

L. A. Watson, of New York City (Broaddus & Fite, of Muskogee, Okl., and E. R. Helferich and Watson, Bristol, Johnson & Leavenworth, all of New York City, on the brief), for appellant.

Jesse R. Stone, of Houston, Tex. (Catlett & Kerr, of Oklahoma City, Okl., and Lester B. Clark and Andrews, Kelley, Kurth & Campbell, all of Houston, Tex., on the brief), for appellee.

Before PHILLIPS, WILLIAMS, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Haynes Stellite Company[1] brought this action against the Osage Metal Co., Inc.,[2] for alleged infringement of claim 2 of patent No. 1,924,976, issued August 29, 1933, covering an apparatus for fusing and casting alloys of high melting temperatures and claims 1, 2, and 4 of patent No. 1,962,705, issued June 12, 1934, covering a process for fusing and casting such alloys. Osage pleaded invalidity and noninfringement. From a decree holding the claims in suit

invalid and not infringed, Stellite has appealed.

The patents in suit are in a crowded art. Tilting electric arc furnaces and rotating molds were old in the art at the time these patents were applied for. It follows that the claims should be narrowly construed.[3]

1. *Patent No. 1,924,976.*

The elements of claim 2 of this patent are:

(1) A centrifugal casting machine and an electric arc furnace for melting a charge.

(2) Said furnace having a discharge opening therein.

(3) Said casting machine comprising

(a) a rotatable mold carried by said furnace;

(b) means for moving said mold away from and toward said opening for discharging the furnace melt;

(c) means for securing said mold adjacent to said opening to receive the furnace melt;

(d) means for rotating said mold.

(4) Means for tilting said furnace to pour the melt into said mold while said mold is rotating.

The specification of patent No. 1,924,976 in part reads as follows:

"Alloys that melt at extremely high temperatures tend to freeze so quickly when the source of heat is removed that it is impossible to handle them in ladles like low melting alloys, or even to pour them directly from the crucible in which they are melted into stationary molds and secure good castings. Therefore, in order to produce good castings from such an alloy it must be transferred from the crucible to the mold instantly and in addition pressure must be applied to force it into the mold. * * *

"Therefore, one object of this invention is to provide a centrifugal casting machine adapted for fusing a high melting alloy and then casting it instantly in a rotating mold. Another object is to provide such a machine with facilities for positioning the rotating mold in the furnace close to the crucible at the time of casting. Another

[1] Hereinafter referred to as Stellite.
[2] Hereinafter referred to as Osage.
[3] Minerals Separation v. Butte &c. Min'g Co., 250 U.S. 336, 346, 39 S.Ct. 496, 63 L.Ed. 1019;

Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 67 L.Ed. 523;
Dillon Co. v. Continental Supply Co., 10 Cir., 98 F.2d 581, 588.

object is to provide such a machine with facilities for tilting the entire machine as a unit to perform the casting operation. Another object is to provide such a machine with facilities for keeping the mold cool while the alloy is being fused and for introducing the comparatively cool mold into the furnace at the time of casting."

The patent in suit is illustrated by the following patent drawing:

The casting operation is described in the specification as follows:

"The casting operation is performed by an operator who grasps the handle and tilts the entire casting machine on its trunnions Q so the molten alloy in the crucible C is poured out through the aperture 16 into the rotating mold M through the sprue 53. When the crucible C reaches a horizontal position the electric current is disconnected from the electrode."

The specification describes element 3(b) of the claim in suit substantially as follows: Secured to the outside of the furnace A by means of rivets is a bracket that carries a swinging table 35 by means of a vertical pivot positioned approximately at the level of the axis of the furnace. Secured to the table by means of bolts are two supports 37 and 38 provided with bearings in which a shaft 39 is carried in such a manner that it is free to rotate. The inner end of the shaft is provided with a threaded portion whereby the mold M may be screwed on to the shaft. By swinging the table on its

pivot the mold on the inner end of the shaft is moved into opening 14 to receive the melt from the crucible. When the melt is discharged from the crucible, the mold is moved away from the heated crucible by swinging the table on its pivot. By this means a comparatively cool mold is introduced into the furnace at the time of casting.

It will be observed that the furnace, including the electrode, and the rotatable mold are so mounted that they will tilt as a unit, and, since the entire device is tilted to pour the melt, the heating may be continued until the crucible reaches a horizontal position, and that means are provided for moving the mold into and away from the opening in the crucible.

In the alleged infringing device the electrode and the furnace are mounted separately on a single stationary frame. The electrode must be raised out of the crucible before the furnace can be tilted to discharge the melt, and, therefore, the heating cannot be continued until the instant the melt is poured. The alleged infringing device has no means for moving the mold into and away from the opening in the crucible; the mold is attached to a flexible shaft and is lifted manually and placed in position to receive the melt, and after the melt is discharged from the crucible into the mold, the mold is lifted manually to take it away from the crucible. Thus, it will be seen that the alleged infringing device does not embrace an electrode which may be tilted with the furnace, and does not contain element 3(b) of the claim in suit.

*2. Patent No. 1,962,705.*

The claims in suit of this patent read as follows:

"1. The process of casting alloys which contain substantial amounts of tungsten and which melt at temperatures upwards of about 1700° C. comprising fusing said alloy, maintaining it in the fused condition by the application of heat until the instant it is poured, and pouring it directly into a relatively cool rotating mold."

"2. The process of casting alloys which contain substantial amounts of tungsten and which melt at temperatures upwards of about 1700° C. comprising fusing said alloy by an electric arc, maintaining it in the fused condition by said arc until the instant when said alloy is poured, and pouring said alloy directly into a relatively cool rotating mold."

"4. The process of casting an alloy containing a large proportion of tungsten car-

bide which comprises fusing said alloy by an electric arc, maintaining the alloy in a fused condition by means of said arc until the instant the alloy is poured, and pouring said alloy directly into a relatively cold rapidly rotating mold."

It will be noted that an element or step in claim 1 is "the application of heat until the instant it [the alloy] is poured"; that an element of claim 2 is "maintaining it [the alloy] in the fused condition by said arc until the instant when said alloy is poured"; and in claim 4 "maintaining the alloy in a fused condition by means of said arc until the instant the alloy is poured." The specification in part reads as follows:

"The invention therefore includes a process of casting high-melting alloys, for example tungsten carbide compositions, which comprises fusing the said alloy, maintaining it in the fused condition by the application of heat until the instant it is poured, and pouring it instantly into a relatively cool mold. * * * When the casting machine has been tilted about 90 degrees the electric current is disconnected from the electrode."

It is clear from the claims and the specification that one act or step in the process is maintaining the current in the electrode and continuing the heating of the alloy until the instant it is poured into the mold. The process employed by Osage omits that act or step. In carrying out the Osage process the electrode is raised out of the crucible and above the furnace before the latter is tilted to discharge the melt, and the heating is not continued until the instant the melt is poured. Thus, one of the series of steps which constitute the patented process is omitted by Osage.

■ Every element of a combination claim for an apparatus and every step or operation of a combination claim for a process is conclusively presumed to be material. The omission of one element, operation, or step of the claim avoids infringement of that claim, whether or not the omitted element, operation, or step is essential to the combination.[4]

In Fay v. Cordesman, 109 U.S. 408, 420, 3 S.Ct. 236, 244, 27 L.Ed. 979, the court said:

"The claims of the patents sued on in this case are claims for combinations. In such a claim, if the patentee specifies any element as entering into the combination, either directly by the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality."

Since the alleged infringing device is not mounted as a unit so that the electrode may be tilted with the furnace and does not comprise means for moving the mold into and away from the opening in the crucible, or any equivalent means, it does not infringe the claim in suit of patent No. 1,924,976.

Since the process employed by Osage does not include the step of maintaining the current in the electrode and continuing the heating of the alloy until the instant the melt is poured, or any equivalent step, it does not infringe claims 1, 2, and 4 of patent No. 1,962,705.

We deem it unnecessary to pass on the validity of the claims in suit.

The judgment of the lower court dismissing the bill is affirmed.

### On Petition for Rehearing.

■ We adhere to the conclusion reached in our former opinion that the claims in suit are not infringed by the device and process employed by Osage Metal Co., Inc.

Counsel for the Stellite Company insist that we have erroneously read into claim 2 of patent No. 1,924,976 the element of an electrode mounted as an integral part of the furnace so that the electrode may be tilted with the furnace to perform the casting

---

[4] Jensen-Salsbery Lab. v. O. M. Franklin Blackleg Serum Co., 10 Cir., 72 F.2d 15, 18;

Hall-Mammoth Incubator Co. v. Teabout, 2 Cir., 215 F. 109, 110;

Kennedy v. Solar Refg. Co., C.C.Ohio, 69 F. 715, 717;

Fay v. Cordesman, 109 U.S. 408, 420, 3 S.Ct. 236, 27 L.Ed. 979;

McClain v. Ortmayer, 141 U.S. 419, 425, 12 S.Ct. 76, 35 L.Ed. 800;

Walker on Patents, 6th Ed., § 399.

operation and the heat maintained in the melt until the instant of pouring. We are of the opinion that when claim 2 is read in the light of the portion of the specification quoted in our former opinion and the patent drawings, it should be so construed. See Jensen-Salsbery Lab. v. O. M. Franklin B. Serum Co., 10 Cir., 72 F. 2d 15, 19. Furthermore, in the prosecution of the application for the patent before the Patent Office the applicant in urging the allowance of a claim said: "the references show no means for tilting a crucible, rotating mold, and heating means as a unit. This is one of the essential features of the invention for in case the heating means is removed before the machine is rotated the metal will freeze."

But if we be wrong in so construing claim 2, the omission in the alleged infringing device of any means for moving the mold into and away from the opening in the crucible or any equivalent therefor, clearly avoids infringement.

In the petition for rehearing counsel for the Steilite Company insist that we pass on the validity of the claims in suit. While the patent is in a crowded art and the elements of the combination are old, the combination itself is new and it produces an old result in a more facile, economical, and efficient way.

We are of the opinion that the claims in suit, if narrowly construed, are valid.

The judgment is modified so as to adjudge the claims in suit valid and as so modified is affirmed.

The petition for rehearing is denied.