**BAND–IT CO. et al. v. McANENY.**

**No. 2494.**

Circuit Court of Appeals, Tenth Circuit.

Oct. 27, 1942.

Rehearing Denied Dec. 28, 1942.

Carle Whitehead, of Denver, Colo. (Alter & Upton, Albert L. Vogl, and Frank A. Wachob, all of Denver, Colo., on the brief), for appellants.

W. A. McGrew and Max D. Melville, both of Denver, Colo., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Michael J. McAneny, Jr., brought this suit against Band-It Company and Dental Specialty Company[1] for alleged infringe-

ment of claims 1 and 2 of the Campbell Patent, No. 2208114, issued July 16, 1940. From a decree holding the claims in suit valid and infringed, granting injunctive relief, and ordering a reference to ascertain profits and damages, the defendants have appealed.

The defendants admit the validity of the claims but deny infringement.

The patent covers a device for applying a clamp band around a hose, drawing the band to a proper tension, cutting the unused portion of the band and locking it in place by means of a head or buckle. It is illustrated by the following patent drawings:

Fig 4

Fig 5

The primary object of the invention is to provide a tool in which bands of the exact length are cut from a continuous strip by the tool itself after the band is in place around a hose, thereby eliminating one of the cutting operations required in prior art devices and preventing waste of the band material.

In employing the device of the patent in suit an end of a band 39 is bent to form a hook 39a to engage a locking buckle 40. To form the hook, the band end is inserted into the slot of the cutting member and is then bent back upon itself. The buckle 40 is slipped onto the band and a loop is formed

---

[1] Hereinafter called defendants.

around the hose. The hook end is engaged in the buckle, while the part of the band that extends through the buckle is inserted into the tool through the slot on the side of the cutting member over the cutting edge of the rotary shear 19, the shear and cutting edge being open on one end to receive the band sidewise. The band is next positioned over the cam in the slide 26, beyond which it may extend indefinitely as indicated by 35a. The eccentric key 33 is then positioned in the bearing and the eccentric thereof is rotated to grip the band between the key and the cam. The thrust jaw 16 of the tool is then placed against bridge 40a of the buckle and the tension screw is turned to draw the slide and tighten the band around the hose. When the band is sufficiently tight the tool is rotated as shown in Figure 5 to bend it over the buckle and thereby lock it. The rotary shear is then operated to cut off the band to the exact length required for the locking end. The tongues 25 of the buckle are bent over the band end by means of the slot in the shear handle to secure the lock. The primary improvement in the device is the means by which the band may be inserted sidewise into the cutting element rather than being threaded into the cutting element, thus requiring only one cutting of the band, permitting the use of a continuous band, and preventing waste. In prior devices a strip had to be cut of sufficient length to band the hose and also to reach through the cutting device and fasten to the slide member to apply the tension.

Claim 1 reads as follows:

"A tool of the character described comprising a frame element, a slide member adapted to move along the frame element and be guided thereby, means for so moving the slide, an open-end cutting member on the frame there being an open sided slot in the frame adjacent said cutting member whereby a hose band may be inserted sideways in a position to be severed by the cutting member and in alinement with said slide member, key bearings on said slide member, an eccentric key adapted to be journaled in the bearings, and band-gripping means on the slide member positioned to cooperate with said key when it is journaled on the slide for gripping a hose band."

Claim 2 is substantially like claim 1, except that it embraces the element of a "band-gripping key adapted to be *removably* journaled in the bearings." (Italics ours.)

The patent drawings illustrate a removable key for clamping the band against the cam of the slide member. The alleged infringing device does not employ a removable key but provides an open slot on the side for inserting the band between the key and the cam. In all other respects it is substantially the same as the device of the patent in suit. Counsel for the defendants contend that the peculiar construction of the cam member and the removable key constituted the basis upon which the patent was granted. We find no basis for this contention in the record. The removable key is not an element of claim 1 of the patent in suit and was not referred to in the patent proceedings as a basis for the allowance of the claims. Claim 1 was allowed prior to the allowance of claim 2. Claim 1 does not call for a removable key. The whole emphasis of the applicant in the patent proceedings was upon the construction of the cutting member which permitted the band to be inserted sidewise instead of by threading, thereby eliminating one cutting operation, permitting the use of a continuous band, and effecting the saving of band material, thus, by a new combination, producing an old result in a more facile, economical, and efficient way.[2]

The alleged infringing device reads squarely on claim 1 and, in our opinion, infringes that claim.

Claim 2 embraces an eccentric key adapted to be removably journaled in the bearings. The alleged infringing device does not employ a removable key. Every element of a combination is conclusively presumed to be material. The omission of one element of a mechanical combination, unless a mechanical equivalent is substituted therefor, avoids infringement, even though the omitted element is not essential to the combination.[3] Accordingly, we conclude that claim 2 is not infringed.

---

[2] Stearns-Roger Mfg. Co. v. Ruth, 10 Cir., 62 F.2d 442, 446; Galvin Electric Mfg. Co. v. Emerson Electric Mfg. Co., 8 Cir., 19 F.2d 885, 890; Skinner Bros. Belting Co. v. Oil Well Improvements Co., 10 Cir., 54 F.2d 896, 898; Lyman Gun Sight Corp. v. Redfield Gun Sight Corp., 10 Cir., 87 F.2d 26, 27.

[3] Jensen-Salsbery Laboratories, Inc., v. O. M. Franklin Blackleg Serum Co., 10 Cir., 72 F.2d 15, 18; Oliver United Filters, Inc., v. Eimco Corporation, 10 Cir., 91 F.2d 345, 350.

768

The decree below will be modified accordingly, and, as modified, affirmed.

The costs on this appeal will be assessed equally against McAneny and the defendants.